[Cite as *In re S.A.*, 2022-Ohio-265.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF: S.A.

:    JUDGES:
:
:
:    Hon. Craig R. Baldwin, P.J.
:    Hon. John W. Wise, J.
:    Hon. Patricia A. Delaney, J.
:
:    Case No. CT2021-0034
:
:
:
:
:
:    O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Muskingum County Juvenile Court, case no. 21930020 |
| JUDGMENT: | AFFIRMED |
| DATE OF JUDGMENT ENTRY: | January 31, 2022 |
| APPEARANCES: | |

**FOR APPELLANT MOTHER T.A.:**

ALLEN & BAUGHMAN
JILLIAN B. VON GUNTEN
58 N. 5th St., Heritage Stes., Ste. 102
Zanesville, OH 43701

**FOR FATHER J.A.:**
J.A., PRO SE
3240 Babbs Road, Suite A
Nashport, OH 43830

**FOR APPELLEE MUSKINGUM CO. ADULT AND CHILD PROTECTIVE SERVICES**:

MUSKINGUM CO. PROSECUTOR
JOHN DEVER
27 N. 5th St., #201
P.O. Box 1030
Zanesville, OH 43701

*Delaney, J.*

{¶1} Appellant T.A. ("Mother") appeals from the June 7, 2021 Entry of the Muskingum County Juvenile Court granting permanent custody of minor child S.A. to appellee Muskingum County Adult and Child Protective Services ("Agency").[1]

**FACTS AND PROCEDURAL HISTORY**

{¶2} Mother and Father are the biological parents of S.A., a minor child born August 7, 2017.

*Custody proceedings*

{¶3} On February 1, 2019, the Agency filed a complaint alleging S.A. was dependent, neglected, and abused. On March 1, 2019, the Agency filed a case plan noting Mother and Father have significant mental health and substance abuse issues, along with parenting concerns and basic needs which adversely affect their ability to parent the child and to provide the child with a safe, stable, sober home. No one objected to the case plan, and it was approved and adopted by the trial court.

{¶4} On March 20, 2019, the child was adjudicated and found to be a dependent and neglected child. The child was continued in the temporary custody of the Agency.

{¶5} On December 9, 2019, Mother filed a motion for legal custody of the child.

{¶6} In the meantime, Father dismissed his original court-appointed counsel and new counsel was appointed. Father filed a number of pro se motions, and Father's new

---

[1] Father J.A. filed a pro se brief in the instant appeal but is not a party to the appeal. His brief raises different assignments of error than Mother's. Because Father did not file a notice of appeal or otherwise properly join the instant appeal, we sua sponte strike Father's brief. The instant appeal therefore focuses upon those facts relevant to Mother's efforts to challenge the motion for permanent custody.

counsel filed a motion to withdraw citing concerns for counsel's safety and well-being due to Father's behaviors.

{¶7} On March 3, 2020, an annual review and hearing was held on all pending motions. Mother failed to appear; Father appeared without counsel and insisted on representing himself. Upon conclusion of the hearing, the trial court denied Mother's motion for legal custody; denied Father's pro se motions; denied Paternal Grandmother's motion to intervene; granted the Agency's oral motion to withdraw its motion for temporary custody to a paternal great-aunt; granted the guardian ad litem's oral motion to take notice of Father's psychological evaluation dated February 26, 2020; and continued the child in temporary custody of the Agency.

{¶8} On August 17, 2020, the Agency filed a motion for permanent custody and the matter was scheduled for evidentiary hearing on November 24, 2020.

{¶9} On August 25, 2020, Paternal Grandmother filed a second motion to join as a party; appellee and the G.A.L. both objected thereto.

{¶10} Father filed a number of pro se motions, including a motion for parental rights and responsibilities.

{¶11} On November 24, 2020, Mother filed a motion for legal custody to Paternal Grandmother and the matter was scheduled for hearing on November 24, 2020.

{¶12} All parties appeared for the hearing on November 24, 2020, but Father insisted on representing himself. Due to the seriousness of the matter, the trial court continued the evidentiary hearing and appointed standby counsel, after explaining that Father does have the right to represent himself.

{¶13} The hearing on the motion for permanent custody and all other pending motions proceeded on February 10 and April 15, 2021.

*Evidence relevant to Mother's appeal*

{¶14} The following evidence relevant to Mother's appeal was adduced at the evidentiary hearing.

*A.    Mother's failure to complete case plan*

{¶15} This case arose in January 2019 during a domestic violence incident between Mother and Father.  The two physically fought over who should have custody of the child, with both pulling on the child. The child was described as outside in freezing temperatures, improperly clothed during the incident.

{¶16} Mother's original caseworker testified that Mother tested positive for amphetamines and methamphetamine on January 31, 2019. Mother tested positive for THC on February 13, 2019.  Mother has not tested for the Agency since February 13, 2019 because she believes doing so is against her constitutional rights.

{¶17}  Mother was ordered to complete a three-month hair follicle test at the shelter care hearing on February 1, 2019, but Mother refused, stating the test is against her constitutional rights. As of the evidentiary hearing, Mother has not completed a hair follicle test.

{¶18} In April 2019, Mother left Ohio and went to Wisconsin, where she has other children.  Mother was ultimately removed from the Agency's case plan.

{¶19} The current caseworker testified Mother has other children in Wisconsin, where she also has an open case plan with the state children's services agency.  Mother

requested that the Wisconsin children's services agency not share information with the Agency.

{¶20} Mother has not visited with the child since September 2019.

{¶21} Mother testified that she completed her case plan in Wisconsin, but presented no evidence corroborating this assertion. Mother has not signed releases to permit the Agency to obtain information from Wisconsin children's services agencies or treatment providers.

{¶22} Mother testified she does not have stable, independent housing. She travels between Wisconsin and Michigan staying with friends. Mother testified she intends to live in Michigan, but she also recently moved into a home in Wisconsin with a friend. Mother testified she is not on the lease, but pays $350 rent per month. Mother further testified she lives in Michigan part-time with a family friend; she is not on the lease for the Michigan apartment and does not pay rent there.

{¶23} Mother is presently unemployed. She purportedly receives disability payments in the amount of $860 per month and Michigan unemployment benefits. The GAL asked Mother why she is not working but receiving unemployment and Mother stated Michigan has Covid restrictions.

{¶24} Mother admitted she has pending felony drug charges and "bail jumping" charges in Wisconsin.  Police found drugs in her vehicle during a routine traffic stop.

{¶25} Before removal from the Agency case plan, Mother failed to complete any case plan services. Mother has failed to provide any evidence that she successfully completed any case plan services in Wisconsin.

### B. Issues with unsuitable kinship placements

{¶26} Paternal Grandmother failed two separate home studies due to her own history with children's protective services in Muskingum County and in Kenosha, WI. Paternal Grandmother also has a criminal history and a history of alcohol and/or substance abuse.

{¶27} Paternal Grandfather's request for a home study was denied because he has a significant criminal history including three felony convictions for cocaine possession.

{¶28} The trial court found the Agency made reasonable efforts to find a less-restrictive or kinship placement for the child but no such appropriate placement was found because the potential placements either failed home studies or withdrew from home studies due to actions and behaviors of Mother and Father.

### Current placement of S.A.

{¶29} The child was 18 months old when the case was opened; she turned 4 in August 2021 after the permanent custody hearing. The child resides with Paternal Great Aunt and is doing very well; Paternal Great Aunt intends to adopt S.A. and has an approved Interstate Compact home study filed with the trial court.

{¶30} The child is happy, safe, and bonded in the Great Aunt's home and the child's needs are being met.

### Entry granting permanent custody of June 7, 2021

{¶31} The trial court found by clear and convincing evidence that it is in the best interest of S.A. to grant permanent custody to the Agency because S.A. cannot or should not be placed with the parents within a reasonable time pursuant to R.C. 2151.414(E)(1),

(E)(2), and (E)(14), specifically citing the parents' failure to remedy the problems that initially caused S.A. to be placed outside the home. The trial court noted the parents' chronic mental illness and/or chemical dependency, along with their unwillingness to provide food, clothing, shelter, and basic necessities for the minor child. Additionally, the child was in the temporary custody of the Agency for more than 12 consecutive months of a 22-month period of time.

{¶32} Mother now appeals from the trial court's entry of June 7, 2021, and raises one assignment of error:

**ASSIGNMENT OF ERROR**

{¶33} "THE TRIAL COURT ERRED IN TERMINATING [MOTHER'S] PARENTAL RIGHTS BY GRANTING PERMANENT CUSTODY TO [THE AGENCY]."

**ANALYSIS**

{¶34} In her sole assignment of error, Mother argues the trial court erred in granting permanent custody of S.A. to the Agency. We disagree.

{¶35} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1).

{¶36} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy

the requisite degree of proof." *Id.* at 477. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

{¶37} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶38} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶39} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or

more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶40} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

{¶41} We first note that the trial court determined, pursuant to R.C. 2151.414(B)(1)(d), the child has been in the temporary custody of the agency for a period of time in excess of twelve of the prior twenty-two consecutive months. As the Agency points out, Mother does not dispute this finding. Findings under R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(d) are alternative findings and each is independently sufficient to use as a basis to grant the motion for permanent custody. *In re Daltoni*, 5th Dist. Tuscarawas No. 2007 AP 0041, 2007-Ohio-5805. This finding alone, in conjunction with a best interest finding, is sufficient to support the grant of permanent custody. *In re Calhoun*, 5th Dist. Stark No. 2008CA00118, 2008-Ohio-5458.

{¶42} We further find, though, that the trial court did not err in determining the child cannot be placed with Mother at this time or within a reasonable period of time. Under R.C. 2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. 2151.414(E)(1) through (16) exist with respect to each of the child's parents.

{¶43} A review of the record supports the trial court's conclusion that the child cannot be placed with Mother within a reasonable time and Mother has failed continuously and repeatedly to remedy the problems that initially caused the child to be placed outside the home. Mother's argues the trial court erred in finding she submitted no evidence of completion of her case plan; to wit, Mother argues that she presented evidence of a hair follicle test and a certificate regarding completion of "other services." Brief, 5. First, as noted supra, issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger,* 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). In the instant case, the trial court found that Mother's evidence did not establish completion of her case plan.

{¶44} Moreover, as appellee points out, successful completion of a case plan is not dispositive on the issue of reunification. *In re C.Y.,* 5th Dist. Licking No. 14-CA-7, 2014-Ohio-4142, ¶ 29, citing *In re W.A.J.,* 8th Dist. Cuyahoga No. 99813, 2014–Ohio–604. Mother's completion of the case plan is only one factor for a trial court to consider what is in the best interest of the children and, "in legal custody cases, trial courts should consider all factors relevant to the best interest of the child". *Id.,* citing *In the Matter of D.P. and G.P.,* 5th Dist. Stark No.2010CA00348, 2011–Ohio1907.

{¶45} Mother further argues she attempted to visit the child but the caseworker was not cooperative, failing to return emails and only speaking to Mother's Wisconsin caseworker once. We note the evidence before the trial court indicated Mother told the

Wisconsin caseworker *not* to share information with the Agency. This issue is again a credibility call for the trial court. Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis,* supra, 77 Ohio St.3d at 419.

{¶46} Finally, Mother contends the trial court's determination that the best interest of the child would be served by the granting of permanent custody to the Agency was in error because of Mother's concerns regarding a potential adoptive placement. We have frequently noted, "[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children,* 5th Dist. No. 2000CA00244, 2000 WL 1700073 (Nov. 13, 2000), citing *In re Awkal,* 85 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist. 1994).

{¶47} In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether that type of placement can be achieved without a

grant of permanent custody; and (5) whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶48} The court must consider all of the elements in R.C. 2151.414(D) as well as other relevant factors. There is not one element that is given greater weight than the others pursuant to the statute. *In re Schafer*, 11 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532.

{¶49} The focus of the "best interest" determination is upon the child, not the parent, as R.C. 2151.414(C) specifically prohibits the court from considering the effect a grant of permanent custody would have upon the parents. *Awkal*, supra, 95 Ohio App.3d at 315.

{¶50} We find the trial court did not err in finding that granting permanent custody to the Agency was in the best interest of the child.

{¶51} We find the trial court properly considered and weighed the factors in R.C. 2151.414(D) and the trial court's conclusion that the granting of permanent custody to the Agency is in the best interest of the child is supported by competent and credible evidence. Mother's potential concerns are outweighed by the trial court's findings that the child is doing extremely well in her foster home. S.A. was 18 months old when the instant case was initiated, and is now four years old. This is an intended adoptive placement and the foster mother has an approved Interstate Compact home study.

{¶52} S.A. deserves safety, stability, and permanence. The record of this case demonstrates Mother's ongoing issues with substance abuse, housing instability, and mental health have prevented her from providing a home for S.A. Mother now has a

pending criminal felony case.  S.A.'s foster placement is positive and provides structure, love, and support. Permanent custody will permit the upheaval and trauma to end.

{¶53} Based on the foregoing, we find the trial court did not abuse its discretion in granting permanent custody of the child to the Agency.

## CONCLUSION

{¶54} Mother's  sole  assignment of error is  overruled  and the  June  7, 2021 judgment entry of the Muskingum County Court of Common Pleas, Juvenile Division, is affirmed.

By:  Delaney, J.,

Baldwin, P.J. and

Wise, John, J., concur.